1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | RAMON DIEGO DIEGO,

11 |         Plaintiff,

12 |     v.

13 | APOORVA META, et al.,

14 |         Defendants.

CASE NO. C21-0304JLR

ORDER

15

**I.      INTRODUCTION**

16      Before the court are (1) *pro se* Plaintiff Ramon Diego Diego's complaint against

17 Apoorva Meta, Maplebear Incorporated ("Instacart"), Timothy Cook, Apple Corporation

18 ("Apple"), Sundar Pichai, Sundar Pichai Alphabet Corporation ("Google"), The Kroger

19 Company ("Kroger"), and Costco Wholesale Corporation ("Costco") (collectively,

20 "Defendants") (Compl. (Dkt. # 4)); and (2) Magistrate Judge Brian A. Tsuchida's order

21 granting Mr. Diego Diego *in forma pauperis* ("IFP") status and recommending that the

22 court reviews this action pursuant to 28 U.S.C. § 1915(e)(2)(B) (IFP Order (Dkt. # 3)).

ORDER - 1

1    Under 28 U.S.C. § 1915(e), courts have authority to review IFP complaints and must

2    dismiss them if, "at any time," a complaint is determined to be frivolous, malicious, fails

3    to state a claim on which relief may be granted, or seeks monetary relief from a defendant

4    who is immune from such relief.  28 U.S.C. § 1915(e)(2).  As discussed below, Mr.

5    Diego Diego's complaint falls within the category of pleadings that fail to state a claim.

6    Accordingly, the court DISMISSES Mr. Diego Diego's complaint with leave to amend.

7                          **II.      BACKGROUND**

8           Mr. Diego Diego brings suit against Defendants for violating §§ 1 and 2 of the

9    Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.* ("Sherman Act").  (*See* Compl.)  Mr. Diego

10   Diego alleges that Defendants "have formed a cartel which operates an online

11   grocery-ordering and-delivery [sic] service directed at consumers."  (*Id.* at 3.)

12   Specifically, he takes issue with Defendants "fraudulently classifying its workers as

13   independent contractors," which allows them to "evade[] the employer-paid portion of

14   Federal employment taxes and other Federally mandated employer costs."  (*Id.*)  These

15   "ill-gotten" savings allegedly allow Defendants to offer services at a cheaper price.  (*Id.*)

16   Mr. Diego Diego alleges that each "cartel member knowingly and willfully participates"

17   in the arrangement.  (*Id.* at 4.)

18          In particular, Mr. Diego Diego focuses on the "fraudulent classification of

19   [Defendants'] workers."  (*See id.* at 4-6.)  He alleges that Defendants exercise "[d]irect

20   control" over workers through the "Shopper App" that dictates how workers fill orders

21   and the sequence of their deliveries.  (*Id.* at 4-5.)  Yet, despite this high level of control,

22   Defendants still qualify these workers as independent contractors.  (*Id.* at 6.)  Because of

1   this classification, Mr. Diego Diego alleges that Defendants do not provide worker's

2   compensation; fail to adhere to federal wage and hour requirements; and do not provide or

3   verify that workers have automotive insurance.  (*Id.* at 7-9.)  Mr. Diego Diego additionally

4   singles out Kroger for engaging in class discrimination by employing some of these

5   workers at its "Curbside Pickup service."  (*Id.* at 9-10.)  Lastly, Mr. Diego Diego alleges

6   that Instacart utilizes its "billions of dollars from private equity firms" to "subsidize free

7   or below-cost delivery in their quest to build a customer base for the cartel."  (*Id.* at 10.)

8        Mr. Diego Diego seeks injunctive relief requiring (1) Defendants to reclassify their

9   workers as employees and (2) Apple and Google to deactivate the Instacart application on

10  their respective platforms.  (*Id.* at 11.)  He also seeks $150 million in damages "for

11  damage to and lost opportunity for the plaintiff's business."  (*Id.*)  Lastly, he asks for

12  restitution "for all fraudulently classified workers."  (*Id.*)

13                           **III.   ANALYSIS**

14       Title 28 U.S.C. § 1915(e)(2)(B) authorizes a district court to dismiss a claim filed

15  IFP "at any time" if it determines:  (1) the action is frivolous or malicious; (2) the action

16  fails to state a claim; or (3) the action seeks relief from a defendant who is immune from

17  such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).  Section 1915(e)(2) parallels the language of

18  Federal Rules of Civil Procedure 12(b)(6).  *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th

19  Cir. 2000). The complaint therefore must allege facts that plausibly establish the

20  defendant's liability.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).

21  Because Mr. Diego Diego is a *pro se* plaintiff, the court must construe his pleadings

22  liberally.  *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992).  But even

1    liberally construed, Mr. Diego Diego's complaint fails to plausibly establish the

2    Defendants' liability under the Sherman Act or raise his "right to relief above the

3    speculative level." *See Twombly*, 550 U.S. at 555.

4        As a threshold matter, Mr. Diego Diego does not include any factual allegations

5    on how he is involved in this action and thus fails to establish antitrust standing.  To

6    establish antitrust standing, a plaintiff must plead the existence of an antitrust injury,

7    which is comprised of "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3)

8    that flows from that which makes the conduct unlawful, and (4) that is of the type the

9    antitrust laws were intended to prevent." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352

10    F.3d 367, 372 (9th Cir. 2003) (internal quotation marks omitted).  Additionally, the

11    injured party must be "a participant in the same market as the alleged malefactors." *Id.*

12    Mr. Diego Diego's only reference to himself in his complaint is when he sought

13    damages for "lost opportunity for [his] business." (Compl. at 11.)  It is additionally

14    unclear whether Mr. Diego Diego is a "fraudulently classified worker[]." (*See id.*)  This

15    is insufficient to establish standing.

16        Moreover, Mr. Diego Diego fails to state a claim under either section of the

17    Sherman Act.  To state a claim under § 1 of the Sherman Act, the plaintiff must first

18    establish three elements:  "(1) an agreement or conspiracy among two or more persons

19    or distinct business entities; (2) by which the persons or entities intend to harm or

20    restrain competition; and (3) which actually injures competition."[1]  *Oltz v. St. Peter's*

21

22    _____

       [1] This inquiry is known as the "rule of reason" analysis, as opposed to *per se* liability, which is "reserved for only those agreements that are 'so plainly anticompetitive that no

ORDER - 4

1   *Cmty. Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988).  A plaintiff "may not merely recite

2   the bare legal conclusion that competition has been restrained unreasonably." *Les*

3   *Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989).

4   Instead, a plaintiff must "at a minimum, sketch the outline of the antitrust violation with

5   allegations of supporting factual detail," including "proof of the relevant geographic and

6   product markets and demonstration of the restraint's anticompetitive effects within those

7   markets." *Id.*  Mr. Diego Diego's complaint states summarily that Defendants "have

8   formed a cartel" and vaguely describes the roles of each Defendant but offers no factual

9   allegations as to an "agreement or conspiracy" amongst them.  (Compl. at 3.)  The

10  complaint says nothing about Defendants' intent to harm or restrain competition or how

11  their supposed conspiracy actually injures competition in the relevant market.  (*See id.*)

12  Thus, Mr. Diego Diego fails to state a claim under Sherman Act § 1.

13          The same is true for Mr. Diego Diego's claim under Sherman Act § 2.  Section 2

14  of the Sherman Act makes it illegal to "monopolize . . . any part of the trade or

15  commerce among the several states."  15 U.S.C. § 2.  To state a claim for

16  monopolization under § 2, the plaintiff must allege facts that, if true, will prove "(1) the

17  possession of monopoly power in the relevant market and (2) the willful acquisition or

18  maintenance of that power as distinguished from growth or development as a

19  consequence of a superior product, business acumen, or historic accident." *Eastman*

20  //

---

21  elaborate study of the industry is needed to establish their illegality.'" *Texaco Inc. v. Dagher*,
    547 U.S. 1, 5 (2006) (quoting *Nat'l Soc. of Pro. Eng'rs v. United States*, 435 U.S. 679, 692
22  (1978)).  The complaint does not allege *per se* liability.  (*See* Compl.)

1    *Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 480 (1992).  "To safeguard the

2    incentive to innovate, the possession of monopoly power will not be found unlawful

3    [under § 2] unless it is accompanied by an element of anticompetitive conduct."  *Verizon*

4    *Comm'cns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  The

5    complaint delves into how Defendants[2] improperly categorize their workers and violate

6    wage or benefits law; commit tax fraud; engage in insurance fraud; perpetuate class

7    discrimination amongst workers; and fraudulently represent a SEC security.  (*See* Compl.

8    at 4-10.)  But the complaint contains no factual allegations establishing Defendants'

9    monopoly power in the relevant market or how that power is distinguishable from regular

10   growth or development; nor does it allege anticompetitive conduct.  (*See id.*)  Thus, the

11   court concludes that the complaint fails to state a claim against Defendants and dismisses

12   his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

13         When a court dismisses a *pro se* plaintiff's complaint, the court must give the

14   plaintiff leave to amend unless it is absolutely clear that amendment could not cure the

15   defects.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  Thus, the court

16   grants Mr. Diego Diego fourteen (14) days to file an amended complaint that properly

17   addresses the pleading deficiencies identified in this order.  If Mr. Diego Diego fails to

18   //

19   //

20
21   [2] The complaint repeatedly attributes all actions to "the cartel" of Defendants.  (*See* Compl. at 3-9.)  It is not clear whether Defendants are jointly classifying workers as independent contractors.  (*See id.*)  Thus, the court adopts the complaint's allegation that Defendants are all involved in the alleged misdeeds but encourages Mr. Diego Diego to be more specific in
22   pleading which entity has committed which act.

1   timely comply with this order or fails to file an amended complaint that corrects the

2   identified deficiencies, the court will dismiss his complaint without leave to amend.

3                              **IV.    CONCLUSION**

4         For the foregoing reasons, the court DISMISSES Mr. Diego Diego's complaint for

5   failure to state a claim under 28 U.S.C. § 1915(e)(2)(B) with leave to amend within

6   fourteen (14) days of the filing of this order.

7         Dated this 25th day of March, 2021.

8

9   _____

10                              JAMES L. ROBART
                              United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 7