UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Ramon Diego Diego, | NO. 2:21-cv-00304-JLR |
| Plaintiff, | |
| v. | FIRST AMENDED COMPLAINT |
| | FOR UNFAIR COMPETITION |
| Apoorva Meta and Maplebear Incorporated dba Instacart, | AND RESTRAINT OF TRADE |
| Apple Corporation | Jury Trial: No |
| Alphabet Corporation DBA Google, | |
| The Kroger Company, | |
| Costco Wholesale Corporation | |
| Defendants | |

## I.   THE PARTIES TO THIS COMPLAINT

**1.**   Plaintiff

   Ramon Diego Diego
   111 South Jackson Street
   Seattle, King County
   Washington 98104
   360 502-2981   Voice & Text
   rdd@localdeliveryto.me

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 1

2. Defendant(s)

    Defendant No. 1

        Apoorva Mehta and Maplebear Incorporated DBA Instacart

        50 Beale Street Suite 600

        San Francisco, San Francisco County

        California 94105

        888-246-7822

    Defendant No. 2

        Apple Corporation

        One Apple Park Way

        Cupertino, Santa Clara County

        California 95014

        800-275-2273

    Defendant No. 3

        Alphabet Corporation DBA Google

        1600 Amphitheater Parkway

        Mountain View, Santa Clara County

        California 98043

        650 253-0000

    Defendant No. 4

        The Kroeger Company

        1014 Vine Street

        Cincinnati, Hamilton County

        Ohio 45202

        800 576-4377

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 2

    Defendant No. 5

      Costco Wholesale Corporation

      999 Lake Drive

      Issaquah, King County

      Washington 98027

      425-313-8100

## II. BASIS FOR JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

## III. NATURE OF THIS ACTION

This is an action for restraint of trade and unfair competition under the laws of the United States (the Sherman Antitrust Act, codified at 15 U.S.C. § 1, et seq.), and the common law of restraint of trade and unfair competition.

## IV. PLAINTIFFS STATEMENT OF CLAIM

The plaintiff is the developer and sole proprietor of a Web based grocery and takeout-food delivery platform doing business as localdeliveryto.me. This platform provides order taking, address mapping, credit card acceptance, text messaging and support services which allow independent delivery-service operators to take online orders directly from their customers and efficiently make deliveries. Independent delivery-service operators pay a monthly fixed fee to localdeliveryto.me for shared use of the platform. Those independent operators may then freely pursue their trade within their designated geographical area.

The defendants have formed a cartel which operates as an online grocery shopping and delivery service known on the Web as Instacart. The cartel provides online ordering of groceries by consumers. It endeavors to have grocery orders delivered to the customer's doorstep in about an

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 3

hour. The cartel uses a class of worker which it refers to as "Full-Service Shoppers" to do the picking and delivery of the grocery orders. While the cartel would have us believe these workers are independent contractors they are controlled and directed by the cartel as employees. Fraudulently classifying Full-Service Shoppers as independent contractors dramatically reduces the cartel's cost of operation allowing it to offer its shopping and delivery services to consumers at prices with which no legitimate service provider can compete. This predatory pricing constitutes unfair competition and restraint of trade against localdeliveryto.me. Unfair competition and restraint of trade is prohibited by the Sherman Antitrust Act and common law.

Exhibit A: Instacart customer app.   Exhibit B: localdeliveryto.me app.




FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 4

## V. FACTUAL ALLEGATIONS

In the parlance of the Internet, a platform is a collection of services which allow individuals and enterprises to conduct various online activities without the need to develop or understand the underlying technology that makes those activities possible.

By example, eBay is an online auction platform. It allows individuals to conduct online auctions of their wares without the need to develop and maintain the "back end" servers, computer code and underlying business processes that make those auctions possible.

The plaintiff has developed a grocery and takeout-food delivery platform which allows independent delivery-service operators to take orders from their customers and efficiently deliver those orders to the customer.

The defendants have formed a cartel which operates as an online grocery-ordering-and-delivery service directed at consumers. Several busines-practices of the cartel flagrantly violate Federal statutes. For example, by fraudulently classifying its workers as independent contractors, the cartel evades the employer-paid portion of Federal employment taxes and other Federally mandated employer costs. Evading Federal employer taxes significantly reduces the cartel's cost of labor. These ill-gotten savings allow the cartel to offer its delivery services to consumers at a price far less than can be offered by legitimate operators who follow the rules.

Like the legs of a three-legged milking stool, each member of the cartel participates in one of three essential roles. And just as the milking stool must have all three legs intact to function, the cartel must have at least one member in each of three roles:

- Recruitment and management of the order-picking-and-delivery workers.

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 5

- Distribution and messaging-services for the mobile-device app used to recruit, track and direct the workers.

- Supply of product and the premises from which the workers pick the cartel-issued orders and then deliver those orders to the cartel's customer.

There is little, if any, overlap of roles within the cartel. Each cartel member knowingly and willfully participates in one interdependent role. For example, the cartel must have continuous access to the push-messaging features provided by the app platform. The app platforms' push-messaging system is an essential component in the command and control of the cartel's workers. Should a cartel member serving in the app distribution role choose to withdraw from the cartel, that member could block the use of push-messaging for the cartel's Shopper App with a single terminal keystroke in the appropriate form. This would bring the cartel's delivery system to an instantaneous halt.

The overarching offense that allows the cartel to offer its service at below-cost prices is the fraudulent classification of its workers as independent contractors.

1. **Fraudulent Classification of Workers**

The cartel employs a class of worker known as "Full-Service Shoppers". The cartel, after accepting an order from a customer for home-delivered groceries, compiles the information needed to fulfil that order into an electronically transmittable form which they call a "batch". Summaries of pending batches are frequently transmitted over the Internet to a select group of Full-Service Shoppers by way of the Shopper App. The worker who volunteers for and is assigned a given batch is dispatched to a specific grocery store to pick the order and deliver it to the cartel's customer. Deliveries are made by the worker in the worker's personal vehicle.

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 6

At all points during the work assignment and order picking process the worker is directed by the cartel through the app. For example, the cartel must explicitly approve each item going into the grocery cart before the next item on the cartel-supplied list can be picked. Additionally, the cartel facilitates direction of the worker by the customer through in-app text-messaging. Workers must respond to and execute all changes initiated by the customer during the order picking. It is common for a worker to receive a request from the cartel's customer for additional items, even after the worker has entered the checkout line. At the checkout counter the groceries are paid for with a cartel-issued debit card. Direct control of the worker does not stop at checkout. If there are multiple delivery locations for a given batch, the sequence in which those deliveries are made is dictated by the cartel.

The defendants have fraudulently deemed each Full-Service Shopper to be an independent contractor. As such, the cartel does not pay the mandated costs borne by employers such as the employer's portion of Federal Employment Taxes (FICA Part One and Two), the Federal Unemployment Tax and state Worker's Compensation insurance. Additionally, by disavowing Full-Service Shoppers as employees, the cartel deflects liability for damage and loss to its customers and the public at large that might be caused by an accident or negligence during the delivery stage of a work assignment.

The United States Internal Revenue Service applies what are known as Common Law Rules to determine if a worker is an employee or an independent contractor. The Common Law Rules are divided into three categories: Behavioral, Financial and Type of Relationship. The IRS cautions that no single factor determines the type of relationship that exists between the worker and the employer but that employers must "consider the degree or extent of the right to direct and control". As the cartel maintains absolute tracking and control of the workers from the

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 7

moment a worker starts an assignment until the moment the assignment is reported as complete, the empirical relationship between the cartel and the Full-Service Shopper is that of employer and employee. Should there be any question regarding the relationship, the IRS provides for submission of Form SS-8 by the employer. Using information truthfully provided by the employer on Form SS-8, the IRS will determine the appropriate classification of the worker. The plaintiff has reason to believe that the cartel does not possess a SS-8 determination in their favor for Full-Service Shoppers.

Full-Service Shoppers perform what has come to known as gig work. The term gig work derives from the musician's custom of performing a few hours at one place one night and a different place the next night. Among musicians these became known as "gigs". There have been recent court determinations that most gig workers are not independent contractor, they are employees. The California Courts have determined that gig workers are employees. In March 2021 the Supreme Court of the United Kingdom ruled that gig workers are employees under UK law.

In fraudulently classifying their Full-Service Shoppers as contractors, the cartel engages in the following criminal conduct:

**2.    Evasion of Federal Employee Taxes**

There are two Federal taxes imposed on employers. In the case of FICA, fifty percent of the tax is paid by the employer and fifty percent by the employee. In the case of FUTA, the tax is paid by the employer. By fraudulently classifying its Full-Service Shoppers as contractors, the cartel evades all Federal employee tax.

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 8

### 3. Failure to Provide Worker's Compensation Insurance

Worker's compensation insurance is Federally mandated but managed at the State level. Its primary purpose is to pay the medical costs of workers who suffer an injury while working. By fraudulently classifying its Full-Service Shopper workers as independent contractors the cartel does not pay, nor are the worker's eligible for, workers compensation insurance A worker who is seriously injured by slipping on an icy concrete driveway during a grocery delivery will have no compensation for medical attention or lost work time. Their only recourse would be to take legal action against the homeowner. This would come as a surprise to the homeowner as, having placed their grocery order with their trusted local grocer, the homeowner would have a reasonable expectation that the person delivering that order would be a bona fide employee; that the delivery person would be insured for injury and property damage while on the homeowner's property.

### 4. Violation of Federal Wage and Hour Rules

Federal law provides that employees must be paid no less than the Federal or State minimum hourly wage, whichever is greater. In an analysis of earnings records from 550 worker dispatches submitted by informants over a six-month period, the hourly equivalent worker-pay for those assignments ranged from $2.11 per hour to $6.50 per hour. The next page contains exhibits comparing the worker pay paid by the cartel on a typical dispatch with the equivalent pay for an employee in a state with a $12.00 per hour minimum wage.

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 9



**Exhibits**

Top Left: A typical work offer made by the cartel to its Full-Service Shoppers showing the approximate location of the proposed delivery, a summary of items to be picked and the likely amount of worker pay upon acceptance and completion.

Top Right: The earnings report available to the worker upon completion of the work assignment.

Bottom Left: An analysis of the worker pay. The **Mandated** column shows pay and Federal taxes for equivalent work in a state with a $12.00 per hour minimum wage. The **Paid** column shows the amount paid by Instacart for this job.

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 10

### 5. Solicitation of Insurance Fraud

Consumer automotive insurers such as Geico, Allstate and State Farm explicitly and by name deny coverage for a vehicle used to deliver for Instacart. They categorically reject all claims by their insured that involve an Instacart delivery. An Instacart worker without commercial automobile insurance accidentally backing over a toddler riding her Hot Wheels in the customer's driveway at dusk will face the financial and legal consequences alone. The cartel believes itself indemnified from such claims by their fraudulent independent contractor agreement with the worker.

Because commercial insurance is both expensive and challenging to obtain for an individual, most Full-Service Shoppers do not carry it. Though commercial insurance is mentioned as a requirement in the fine print of the shopper agreement, it is never mentioned again by the cartel. The cartel has ample means to verify rule compliance by its workers. For example, Full-Service Shopper workers must answer a four question COVID-19 screening questionnaire every day they work for the cartel. They are randomly required to submit "selfies". The Full-Service Shopper worker is never asked for proof of insurance or required to name the cartel as additional insured. According to informants, the word on the street is: "If you get in an accident, lie to the investigator when they get to the question "Were you delivering for Instacart, Grub-Hub or Door Dash when the accident occurred?"

### 6. Class Discrimination of Workers

The Kroeger Company member of the cartel operates grocery stores under many brands including QFC and Fred Meyer. In addition to the typical mix of hourly employees such as checkers and stockers, this cartel member employs order pickers who pick orders for the store's Curbside Pickup service. A single checkbox on the QFC online grocery ordering screen will

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 11

determine if the customer's order is picked by a Kroeger employee, an employee who enjoys the benefits of a unionized wage, sick leave, paid vacation, unemployment insurance, worker's compensation insurance, health insurance and a 401 K; or the cartel's fraudulently classified Full-Service Shopper paid as little as $2.11 per hour.

The Costco member of the cartel has long operated a service delivering Costco products to offices and businesses. From all outward appearances this delivery service is and always has been a model operation. It uses clean well maintained delivery trucks operated by friendly and efficient uniformed drivers who consistently deliver accurately picked orders on time to Costco customers. Costco is aware of the cost to acquire, insure and maintain a delivery fleet and to hire, train and pay workers to pick and deliver orders for its products. Their participation in the cartel clearly demonstrates complicity with the exploitation and discrimination of Full-Service Shoppers who choose Costco batches.

**7.      Fraudulent Representation of a SEC Registered Security**

The financial press has reported that Instacart has raised billions of dollars from private equity firms to finance what is essentially a cash business. A cash business is one in which the business collects the full amount of their service at the time it is delivered. Conventional wisdom points to a cash business requiring less investment capital than businesses which require significant investment in research and development and plant construction and must recruit and train a skilled workforce, acquire inventory and offer terms to their customer. The plaintiff believes Instacart has used the bulk of those billions in investment to subsidize free and below-cost delivery in their quest to build a customer base for the cartel's shopping and delivery service. Though on its face this practice may be legal, the cartel is fulfilling those orders with fraudulently classified and exploited workers.

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 12

In their offering circular, Instacart assures investors that their business practices represent a sustainable business model. The use of business practices which evade taxes in pursuit of trade is not a business model, it is a criminal enterprise and historically not sustainable. In United States v Capone, the notorious gangster Al Capone did not go to prison for the brutality and murders he committed; he was not held accountable for prostitution and numbers running. The defendant, Mister Capone, went to prison first and foremost for evading Federal taxes.

# VI. PRAYER

WHEREFORE, Ramon Diego Diego dba localdeliveryto.me prays for the following relief:

1. A permanent injunction requiring the Instacart led cartel to cease the practice of fraudulently classifying its Full-Service Shoppers as contractors, a practice which perpetrates unfair competition and restraint of trade against Ramon Diego Diego dba localdeliveryto.me.

2. A temporary injunction requiring Apple and Google to deactivate the Instacart Shopper App on their respective platforms until such time as the cartel complies with existing Internal Revenue Service guidelines and Federal employment statutes in respect to Full-Service Shoppers.

3. An award to Ramon Diego Diego dba localdeliveryto.me of treble damages to compensate for the cartel's unfair competition and restraint of trade, in an amount to be proven at trial, including the actual damages and loss of business opportunity.

4. An award of attorneys' fees.

5. Punitive damage in the form of reparation for all former and current Full-Service Shoppers workers though recalculation and payment of earnings and employment taxes based on all accrued "active time" shown on batch earnings screen in the Shopper App, calculated at no less than the prevailing minimum hourly wage in the state where the work was performed.

# VII. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 14

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

      I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

    Date of signing:      07 APR 2021

    Signature of Plaintiff    _____

    Printed Name of Plaintiff    Ramon Diego Diego

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND RESTRAINT OF TRADE - 15